Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| NAYDA D. ORTIZ SANTIAGO<br><br>*Recurrente*<br><br><br>v.<br><br><br><br>JUNTA DE RETIRO DEL SISTEMA DE RETIRO DE LA UNIVERSIDAD DE PUERTO RICO<br><br>*Recurrida* | KLRA202500341 | Revisión Administrativa procedente de la Junta de Retiro del Sistema de Retiro de la Universidad de Puerto Rico<br><br>Caso Núm.:<br>2023-21<br><br><br>Sobre:<br>Revisión de Pensión Adjudicada |
|---|---|---|

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Adames Soto y la Jueza Santiago Calderón

Santiago Calderón, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a <u>19</u> de agosto de 2025.

Comparece ante nos, la señora Nayda D. Ortiz Santiago (señora Ortiz o recurrente), mediante recurso de *Revisión Administrativa* y solicita la revocación de la *Resolución*[1] emitida el 5 de mayo de 2025 y notificada el 8 de mayo de 2025, por la Junta de Retiro del Sistema de Retiro de la UPR (Junta o agencia recurrida). En el referido dictamen, la Junta declaró *No Ha Lugar* la apelación presentada por la recurrente en la que impugna el monto de la pensión de retiro que le había sido adjudicada por la Junta.

Por los fundamentos expuestos a continuación, se ***confirma*** la *Resolución* impugnada.

**I.**

La génesis del caso de marras surgió en el año 2018, cuando la señora Ortiz le solicitó al Sistema de Retiro de la Universidad de Puerto Rico (SR-UPR) que le orientara sobre el proceso de acogerse

---

[1] Anejo 1 del recurso de *Revisión Administrativa*, págs. 1-3.

Número Identificador

SEN2025_____

a la jubilación para recibir una pensión por edad y años de servicio. En respuesta, el 4 de septiembre de 2018, se le expidieron dos (2) documentos intitulados *Respuesta a Solicitud de Cómputos Tentativos de Pensión* en los cuales el SR-UPR certificó que: (1) al 1 de julio de 2021, la recurrente tendría cincuenta y ocho (58) años y habría cotizado veintisiete punto setenta y cinco (27.75) años de servicio y que la pensión a recibir sería de mil quinientos treinta y siete dólares con ochenta y un centavos ($1,537.81)[2] y (2) que al 1 de septiembre de 2023 tendría treinta (30) años de servicio, sesenta y un (61) años de edad y que la pensión a recibir sería de dos mil ciento ochenta y siete dólares con cincuenta centavos ($2,187.50)[3].

En vista de lo anterior, la señora Ortiz presentó su renuncia el 31 de enero de 2023, a ser efectiva el 31 de agosto de 2023. Así las cosas, el 13 de febrero de 2023, la recurrente presentó la *Solicitud de Pensión por Edad y Años de Servicio*[4] ante la agencia recurrida. Evaluada tal solicitud, el 1 de noviembre de 2023, la Junta le cursó una misiva a la recurrente, la cual lee como sigue:

> Me complace informarle que su Solicitud de Pensión por Edad y Años de Servicio ha sido aprobada efectiva al 1 de septiembre de 2023. Esto, de acuerdo con lo dispuesto en el Reglamento del Sistema de Retiro de la Universidad de Puerto Rico. El cómputo de su pensión consideró tres factores básicos: años de servicio acreditados 29.75, edad 61 y sueldo promedio devengado determinado según el tope salarial al cual cotizaba.
>
> A partir del 1 de septiembre de 2023, le corresponde una anualidad de $20,304.36 pagadera en beneficios mensuales de $1,692.03. Esta cantidad será dividida en pagos quincenales y remitida a usted según nuestro calendario de pagos, comenzando con el próximo mes de noviembre de 2023. Las fechas de sus primeros pagos de pensión serán los días 15 y 30 de noviembre de 2023. En lo sucesivo se indicarán las fechas de pago en el talonario del depósito electrónico. Le adjunto tarjeta de identificación con nuestra información de contacto al dorso.
>
> La pensión informada podría estar sujeta a cambios si en el futuro se determina que era incorrecto alguno de los factores básicos utilizados. Los factores relacionados a salarios y años de servicio e inclusive la fecha de efectividad de la pensión pueden afectarse por transacciones efectuadas por

---

[2] Anejo 2 del recurso de *Revisión Administrativa*, pág. 16.
[3] *Íd.*, pág. 17.
[4] Anejo 2 del recurso de *Revisión Administrativa*, pág. 6.

el participante y/o por los recintos desconocidas por este Sistema de Retiro al momento de tramitar la pensión.

Le recordamos que el pago de pensión conlleva descuentos por lo que la pensión aquí informada y el pago neto podrían no coincidir. Se realizarán descuentos obligatorios tales como Contribuciones sobre Ingreso, ASUME y cualquier deuda que mantenga con este Sistema al momento de la jubilación. De igual forma podría incluir otros descuentos opcionales autorizados por el pensionado como lo sería el de plan médico, entre otros[5].

(…)

Inconforme con la determinación, la señora Ortiz presentó ante la agencia recurrida un escrito de apelación[6]. En este, solicitó reconsideración de su caso en cuanto a los años de servicio acreditados de veintinueve punto setenta y cinco (29.75). La recurrente entendía que según fue orientada en el 2018, al 31 de agosto de 2023, debía tener treinta (30) años de servicio y la cuantía de su pensión sería mayor. Por su parte, el 4 de marzo de 2024, la Junta acogió la apelación de la señora Ortiz mediante la *Notificación de Recibido de Apelación*[7].

Luego de una reunión ordinaria, el 5 de mayo de 2025[8], la Junta emitió una *Resolución* y denegó la apelación de la recurrente. En esencia, la agencia recurrida determinó que la señora Ortiz no había completado los treinta (30) años de servicio, sino que, había completado veintinueve punto setenta y cinco (29.75) años de servicio. La determinación de la Junta se basó en la Certificación Núm.14 (2018-2019), la cual enmendó el Artículo II, Sección 1, del Reglamento General del Sistema de Retiro para disponer que no se concedería crédito por periodos de servicio menores de tres (3) meses.

Insatisfecha aun, el 9 de junio de 2025, la señora Ortiz presentó el recurso ante nuestra consideración y le imputó a la agencia recurrida el siguiente señalamiento de error:

---

[5] Anejo 3 del recurso de *Revisión Administrativa*, pág. 18.
[6] Anejo 4 del recurso de *Revisión Administrativa*, pág. 21.
[7] Anejo 5 del recurso de *Revisión Administrativa*, pág. 22.
[8] Notificada el 8 de mayo de 2025.

Cometió error la Junta de Retiro del Sistema de Retiro de la Universidad de Puerto Rico al confirmar la decisión de la Directora Ejecutiva de dicho sistema de computar el monto de la pensión de la recurrente, señora Nayda D. Ortiz Santiago, a base de los criterios de la Certificación Núm. 140 (2014-2015) sin tomar en consideración y haciendo abstracción de que cuando la recurrente fue orientada el 9 de abril de 2018 sobre la fecha de elegibilidad y el monto de la pensión estaba en vigor la Certificación Núm. 140 (2014-2015). En consecuencia, el Sistema de Retiro actuó de manera contraria a la buena fe en las relaciones contractuales ya que no le informó ni orientó a la recurrente en cuanto a que la Certificación Núm. 14 (2018-2019) variaba los términos de la certificación que le había sido expedida cinco años antes y, por ende, le privó del derecho de tomar una decisión informada sobre si se mantenía trabajando para completar los años de servicio o si se acogía a la jubilación bajo los términos de la certificación que se le había expedido el 9 de abril de 2018.

El 11 de junio de 2025[9], emitimos una *Resolución* concediéndole término a la parte recurrida hasta el 19 de julio de 2025 para que presentara su alegato en oposición. Así pues, la Junta compareció mediante escrito intitulado *Oposición a Escrito de Revisión y Solicitud Desestimatoria.*

Con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

**II.**

**-A-**

La Ley de la Judicatura del Estado Libre Asociado de Puerto Rico establece la autoridad del Tribunal de Apelaciones para revisar "decisiones, órdenes y resoluciones finales de organismos o agencias administrativas"[10]. Por su parte, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU) establece el marco de revisión judicial de estas decisiones[11]. Cónsono con lo anterior, nuestra función revisora se limita a delinear la discreción de las entidades administrativas para garantizar que sus decisiones se encuentren en el marco de los poderes delegados y sean consecuentes con la política pública que

---

[9] Notificada el 13 de junio de 2025.
[10] Art. 4006(c) de la Ley Núm. 201-2003, 4 LPRA sec. 24(y)(c).
[11] Sección 4.5 de la Ley Núm. 38-2017, 3 LPRA sec. 9675.

las origina[12].

Debido a la vasta experiencia y conocimiento especializado que tienen las agencias administrativas sobre los asuntos que le son encomendados, los foros revisores les conceden gran consideración y deferencia a sus decisiones[13]. Al mismo tiempo, esta facultad revisora delimita la discreción de los organismos administrativos a modo de asegurar que estos ejerzan sus funciones dentro de los márgenes de las facultades que le fueron delegadas por ley[14]. Es por esta razón, que la revisión judicial se limita a determinar si la agencia actuó de manera arbitraria o ilegal, o de forma tan irrazonable que sea considerado un abuso de discreción[15]. Hay que señalar que las determinaciones de los organismos administrativos están cobijadas por una presunción de corrección y legalidad que debe respetarse, mientras la parte que las impugne no demuestre con suficiente evidencia que la decisión no está justificada[16].

Así pues, la revisión judicial de una decisión administrativa se circunscribe a determinar si hay evidencia sustancial en el expediente para sostener la conclusión de la agencia o si esta actuó de forma arbitraria, caprichosa o ilegal[17]. El criterio rector es la razonabilidad de la actuación de la agencia recurrida[18]. Por ello, al momento de evaluar una determinación administrativa se debe considerar si: (1) el remedio concedido por la agencia fue apropiado; (2) la decisión de la agencia está sostenida en evidencia sustancial

---

[12] *Torres Rivera v. Policía de PR*, 196 DPR 606, 625-626 (2016); *Empresas Ferrer v. A.R.Pe.*, 172 DPR 254, 264 (2007); *Mun. de San Juan v. J.C.A.*, 149 DPR 263, 279 (1999).

[13] *Super Asphalt v. AFI y otro*, 206 DPR 803, 819 (2021); *OCS v. Point Guard Ins.*, 205 DPR 1005, 1026 (2020); *PRHOA v. Confederación Hípica*, 202 DPR 509, 521 (2019).

[14] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, 2025 TSPR 56, 215 DPR ___ (2025).

[15] *Pérez López v. Depto. de Corrección*, 208 DPR 656, 673 (2022); *Super Asphalt v. AFI y otro, supra*, pág. 821; *Trigo Margarida v. Junta Directores*, 187 DPR 384, 394 (2012).

[16] *Trigo Margarida v. Junta Directores, supra*, págs. 393-394; *Mundo Ríos v. CEE et al.*, 187 DPR 200, 219 (2012), citando a *Rebollo v. Yiyi Motors*, 161 DPR 69, 77 (2004).

[17] *Vélez v. A.R.Pe.*, 167 DPR 684, 693 (2006).

[18] *Super Asphalt v. AFI y otro, supra*; *González Segarra et al. v. CFSE*, 188 DPR 252, 276 (2013); *Trigo Margarida v. Junta Directores, supra*, pág. 394.

que obra en el expediente administrativo visto en su totalidad; y (3) las conclusiones de derecho fueron correctas[19].

Ahora bien, si la decisión del organismo administrativo no estuvo basada en evidencia sustancial; erró en la aplicación o interpretación de las leyes o los reglamentos que se le encomendó administrar; o actuó de manera irrazonable, arbitraria o ilegal, al realizar determinaciones carentes de una base racional; o si la actuación lesionó derechos constitucionales fundamentales, la deferencia debida a la agencia debe ceder[20].

Si una parte afectada por un dictamen administrativo impugna las determinaciones de hecho, esta tiene la obligación de derrotar con suficiente evidencia, que la determinación no está justificada por una evaluación justa del peso de la prueba que tuvo ante su consideración[21]. De no identificarse y demostrarse esa otra prueba en el expediente administrativo, las determinaciones de hechos deben sostenerse por el tribunal revisor, pues el recurrente no ha logrado rebatir la presunción de corrección o legalidad[22].

Sobre las determinaciones de derecho, el Tribunal Supremo ha dicho que distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno[23]. Sin embargo, esto no quiere decir que un foro apelativo pueda descartar las conclusiones y sustituir el criterio del ente

---

[19] *OEG v. Martínez Giraud*, 210 DPR 79, 89 (2022); *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018); *Pagán Santiago et al. v. ASR*, 185 DPR 341, 358 (2012).

[20] *OEG v. Martínez Giraud*, *supra*, pág. 90; *Super Asphalt v. AFI y otro*, *supra*, pág. 819, citando a *Torres Rivera v. Policía de PR*, *supra*, pág. 628; *IFCO Recycling v. Aut. Desp. Sólidos*, 184 DPR 712, 744-745 (2012).

[21] *González Segarra et al. v. CFSE*, *supra*, pág. 277; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 216-217 (2012); *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 511 (2011).

[22] *González Segarra et al. v. CFSE*, *supra*; *Pereira Suárez v. Jta. Dir Cond.*, *supra*, pág. 513, citando a *Domínguez v. Caguas Expressway Motors, Inc.*, 148 DPR 387, 398 (1999); *O.E.G. v. Rodríguez*, 159 DPR 98, 118 (2003).

[23] *Vázquez v. Consejo de Titulares y Junta de Directores del Condominio Los Corales*, *supra*.

administrativo por el suyo. En estos casos, también los tribunales apelativos les deben deferencia a los organismos administrativos[24].

**-B-**

El SR-UPR se creó por disposición de la Ley Núm. 135 del 7 de mayo de 1942, posteriormente derogada por la Ley Núm. 1 del 20 de enero de 1966, ambas conocidas como la "Ley de la Universidad de Puerto Rico" (Ley de la UPR)[25]. En ese sentido, el SR-UPR nació como resultado del cumplimiento de las obligaciones que la ley orgánica de la UPR le imponía a la actual Junta de Gobierno, cuerpo encargado de administrar y gobernar la Universidad de Puerto Rico. En especial, el Artículo 3 (H) de la Ley de la UPR, *supra*, estableció los deberes y atribuciones de la Junta de Gobierno, y los pertinente, el inciso (15) implementa la obligación de la Junta de "[m]antener un plan de seguro médico y un sistema de pensiones para todo el personal universitario, el cual incluirá un plan de préstamos sin interponerse a los poderes de la Junta de Retiro"[26]. Como resultado de lo anterior, se adoptó el "Reglamento General del Sistema de Retiro" de la Universidad de Puerto Rico, (RGSR-UPR).[27] Surge del precitado reglamento que: "[e]l propósito del Sistema es proveer beneficios para los funcionarios y empleados de la Universidad contra los riesgos de edad avanzada, incapacidad, muerte o cesantía, con el objetivo de inducir a personas idóneas a entrar y permanecer en el servicio de la Universidad contribuyendo así a una administración eficiente"[28].

---

[24] *González Segarra et al. v. CFSE, supra*, págs. 277-278; *Batista, Nobbe v. Jta. Directores, supra*, pág. 217, citando a *Rebollo v. Yiyi Motors, supra*.
[25] 18 LPRA sec. 601 nota *et seq*.
[26] 18 LPRA sec. 602.
[27] Cabe destacar que el Consejo de Educación Superior estableció el Reglamento General del Sistema de Retiro original a través de la aprobación de una Resolución, cuya resolución también estableció el Sistema de Retiro (Certificación 27, 1973-1974). Posteriormente, dicho Reglamento fue objeto de múltiples enmiendas aprobadas mediante Certificaciones del cuerpo encargado de gobernar la Universidad de Puerto Rico, llámase Consejo de Educación Superior o Junta de Síndicos, actualmente renombrado Junta de Gobierno.
[28] Art. 1 sec. 1 del RGSR-UPR.

Pertinente a la controversia que nos ocupa, el Artículo III, Sección 1 del RGSR-UPR estableció que los participantes del SR-UPR que son elegibles para recibir una anualidad de retiro por servicio son aquellos que: "a. [h]a completado 30 años de servicio; b. [h]a cumplido 55 años de edad y completado diez (10) años de servicio, o c. [h]a cumplido 55 años de edad y tiene 25 años de servicio acreditados". Igualmente, la Certificación Núm. 140 (2014-2015), expedida el 4 de junio de 2015 dispuso que la edad de retiro para aquellos participantes al 1 de julio de 2015 tuvieran menos de veinticinco (25) años de servicios acreditados es de cincuenta y ocho (58) años[29]. Posteriormente, se aprobó la Certificación Núm. 14 (2018-2019), la cual dispuso que no se concederían créditos por periodos de servicios de menos de tres (3) meses[30].

### III.

La señora Ortiz adujo en el recurso de epígrafe que erró la agencia recurrida al confirmar la decisión de computar el monto de su pensión, a base de los criterios de la Certificación Núm. 140 (2014-2015). Esto, sin tomar en consideración y abstraerse de que el 9 de abril de 2018, cuando la recurrente fue orientada sobre el monto de la pensión y sobre la fecha de elegibilidad, estaba en vigor la Certificación Núm. 140 (2014-2015). En consecuencia, la señora Ortiz arguyó que el SR-UPR actuó de manera contraria a la buena fe en las relaciones contractuales, ya que no le informó ni orientó a la recurrente en cuanto a que la Certificación Núm. 14 (2018-2019) la cual variaba los términos de la certificación que le había sido expedida cinco años antes. Por ende, razona que le privó del derecho de tomar una decisión informada en cuanto era el termino específico para completar los años de servicio o si se acogía a la jubilación bajo

---

[29] Art. 1 (a) de la Certificación Núm. 140 (2014-2015).
[30] Art. II sec. 1 (b) de la Certificación Núm. 14 (2018-2019).

los términos de la certificación que se le había expedido el 9 de abril de 2018. Adelantamos que, no le asiste la razón, veamos.

Según adelantamos en la exposición del derecho, el Artículo III, Sección 1 del RGSR-UPR estableció que los participantes del SR-UPR que son elegibles para recibir una anualidad de retiro por servicio son aquellos que: "a. [h]a completado 30 años de servicio; b. [h]a cumplido 55 años de edad y completado diez (10) años de servicio, o c. [h]a cumplido 55 años de edad y tiene 25 años de servicio acreditados". Igualmente, la Certificación Núm. 140 (2014-2015), expedida el 4 de junio de 2015, dispuso que la edad de retiro para aquellos participantes al 1 de julio de 2015 que tuvieran menos de veinticinco (25) años de servicio acreditados es de cincuenta y ocho (58) años[31].

En el caso de autos, la señora Ortiz alegó que al momento de su retiro contaba con treinta (30) años de servicio, por lo que su anualidad debía ser mayor de veinte mil trecientos cuatro dólares con treinta y seis centavos ($20,304.36). Para sustentar su alegación, la recurrente presentó como evidencia la *Respuesta a Solicitud de Cómputos Tentativos de Pensión* en la cual el SR-UPR certificó (2) que al 1 de septiembre de 2023 tendría treinta (30) años de servicio, sesenta y un (61) años y que la pensión a recibir sería de dos mil ciento ochenta y siete dólares con cincuenta centavos ($2,187.50)[32].

Si bien es cierto que la información de la *Respuesta a Solicitud de Cómputos Tentativos de Pensión* era veraz, también es cierto que, posterior a dicha certificación se aprobó la Certificación Núm. 14 (2018-2019), **la cual dispuso que no se concederían créditos por periodos de servicio de menos de tres (3) meses**[33] (Énfasis

---

[31] Art. 1 (a) de la Certificación Núm. 140 (2014-2015).
[32] Anejo 2 del recurso de *Revisión Administrativa*, pág. 17.
[33] Art. II sec. 1 (b) de la Certificación Núm. 14 (2018-2019).

nuestro). **Por lo que, el punto veinticinco (.25) que le completaba los treinta (30) años de servicio a la recurrente, se completaban el 30 de septiembre de 2023 y no el 31 de agosto de 2023**. Esto, debido a que los siguientes periodos no cotizaron: 1 de julio de 1995 al 31 de octubre de 1995 y 1 de julio de 2023 al 31 de agosto de 2023. Por lo que, la señora Ortiz terminó con veintinueve puntos setenta y cinco (29.75) años de servicio.

En su recurso, la recurrente alegó que de haber conocido que no contaría con los treinta (30) años acreditados al 31 de agosto de 2023, hubiese esperado al 30 de septiembre de 2023 para renunciar. Igualmente, arguyó que nunca se le advirtió de los términos de la Certificación Núm. 14 (2018-2019) y que en varias ocasiones indagó si había una variación en cuanto al monto de la pensión y que siempre se le indicaba que no.

No obstante, aunque podemos entender la frustración de la señora Ortiz, nos corresponde aplicar la norma jurídica de forma adecuada. Analizaremos los fundamentos que esgrime, aun cuando no surge del expediente ante nuestra consideración alguna evidencia que constatara las alegaciones vertidas por la señora Ortiz, en cuanto a que corroboró que el monto era el mismo de la *Respuesta a Solicitud de Cómputos Tentativos de Pensión* del 4 de septiembre de 2018. Entiéndase que, si la contención de la señora Ortiz es alegar que fue incorrectamente informada por el personal de la UPR, esto constituiría un error humano o error matemático, lo cual no le concede remedio a reclamar la diferencia monetaria[34]. Por otro lado, luego de transcurrir cinco (5) años desde que se emitiesen las certificaciones del 2018, la señora Ortiz no indagó ni solicitó una nueva certificación para verificar el cómputo real. Así pues, al examinar los hechos y circunstancias de este caso y al no existir

---

[34] Véase *ELA v Crespo,* 180 DPR 776 (2011).

alguna justificación para no solicitar una nueva certificación y analizar el efecto sobre los fondos públicos de la UPR, procede aplicar la doctrina de incuria[35].

Por ende, somos de la opinión que el SR-UPR efectuó el cómputo correcto de la pensión de la recurrente y cumplió con las disposiciones del Reglamento General del Sistema de Retiro y las certificaciones aplicables. Ante ello, colegimos que el error no fue cometido.

**IV.**

Por los fundamentos expuestos, los que hacemos formar parte de este dictamen, **confirmamos** la *Resolución* recurrida.

Notifíquese.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones. El Juez Adames Soto disiente sin voto escrito.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[35] *Consejo de Titulares v. Ramos Vázquez*, 186 DPR 311, 340 (2012). *Molini Gronau v. Corp. P.R. Dif. Pub.,* 179 DPR 674, 687 (2010); *Comisión Ciudadanos v. G.P. Real Property*, 173 DPR 998, 1020 (2008); *Aponte v. Srio. de Hacienda*, 125 DPR 610, 618 (1990).